UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

TODD C. BANK, Individually and on
Behalf of All Others Similarly Situated,

*Plaintiff*,

-against-

HYDRA GROUP LLC,

*Defendant*.

1:10-cv-01770-JG-ALC

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS, MOTION FOR A
MORE DEFINITE STATEMENT, AND MOTION TO STRIKE
PURSUANT TO FED. R. CIV. P. 12(b)(2), 12(b)(6), 12(e), AND 12(f)**

TODD C. BANK
119-40 Union Turnpike
Fourth Floor
Kew Gardens, New York 11415
(718) 520-7125
(TB-6825)

Attorney for Plaintiff

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

FEDERAL STATUTES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATE STATUTES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

CASES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.    THE TYPE OF STATE LAWS THAT MAY REGULATE E-MAIL SPAM
      IS NOT LIMITED TO STATE LAWS THAT SOUND IN FRAUD . . . . . . . . . . . . . . . 2

      A.    States May Prohibit Falsity or Deception in E-Mail Spam, as Does
            Section 17529.5(a)(3) of the California Business and Professions Code . . . . . . . 2

      B.    Section 17529.5(a)(3) of the California Business and Professions Code Does
            Not Create a Standard That is More Strict Than its Federal Counterpart . . . . . . . 4

      C.    A State May Prohibit Materially False or Deceptive E-Mail Spam Without
            Requiring a Showing of All of the Elements of Common-Law Fraud . . . . . . . . 6

II.   AN ACTION FOR VIOLATIONS OF SECTION 17529.5(a)(3) OF THE
      CALIFORNIA BUSINESS AND PROFESSIONS CODE IS NOT AN ACTION
      FOR FRAUD; THEREFORE, THE COMPLAINT IN THIS ACTION IS
      SUBJECT TO THE PLEADING STANDARD OF RULE 8(a), NOT
      RULE 9(b), OF THE FEDERAL RULES OF CIVIL PROCEDURE . . . . . . . . . . . . . . 10

III.  THE COMPLAINT IS SUFFICIENTLY PLEADED UNDER
      RULE 8(a) OF THE FEDERAL RULES OF CIVIL PROCEDURE . . . . . . . . . . . . . . 15

IV.   PRIOR TO MOVING FOR CLASS CERTIFICATION,
      PLAINTIFF MAY PROCEED *PRO SE* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

      A.    During the Current Stage of this Action,
            Plaintiff is Representing Only Himself . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

i

**Page**

**Table of Contents (*Cont'd*)**

B.    The Issue of Whether Plaintiff Would Be Able to Act as
Counsel on Behalf of the Putative Class is Premature . . . . . . . . . . . . . . . . . . . . . . 17

(i)    Federal Rule 23(d)(1)(D) Does Not Authorize the Dismissal
of Class Claims Before the Class-Certification Stage  . . . . . . . . . . . . . 19

(ii)    Federal Rule 12(f) Does Not Authorize the Dismissal
of Class Claims Before the Class-Certification Stage

(iii)    Because the Issue of Adequate Representation Is a Class-Certification
Issue, It must Be Addressed at the Class-Certification Stage  . . . . . . . . 21

(iv)    Only Class Claims That, as a Matter of Law, are Precluded
for Reasons Other Than Their Inability to Satisfy the Prerequisites
of Rule 23 of the Federal Rules of Civil Procedure May
Be Dismissed Before the Class-Certification Stage  . . . . . . . . . . . . . . . 23

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# <u>TABLE OF AUTHORITIES</u>

**Page**

**FEDERAL STATUTES**

Fed. R. Civ. P. 8(a)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 15

Fed. R. Civ. P. 9(b)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 10, 11, 12, 13, 14, 15

Fed. R. Civ. P. 12(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 23, 24

Fed. R. Civ. P. 12(e)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Civ. P. 12(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 21, 22

Fed. R. Civ. P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 22, 23

Fed. R. Civ. P. 23(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Fed. R. Civ. P. 23(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Fed. R. Civ. P. 23(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Fed. R. Civ. P. 23(d)(1)(D) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20, 21

Fed. R. Civ. P. 23(g)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

15 U.S.C. § 45(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 13

15 U.S.C. § 1692, *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

15 U.S.C. § 1051, *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

15 U.S.C. § 7701, *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 5, 6, 9, 10, 11, 12

**STATE STATUTES**

Cal. Bus. & Prof. Code § 17529.5(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

## CASES

**Page**

*Alejandros Bados Madrid v. Peak Constr., Inc.*,
    2009 U.S. Dist. LEXIS 107370 (D. Ariz. Nov. 2, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Arend v. Total Recovery Servs.*,
    2006 U.S. Dist. LEXIS 50479 (E.D.N.Y. July 24, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . 16

*ASIS Internet Services v. Imarketing Consultants, Inc.*,
    2008 WL 2095498 (N.D. Cal. May 16, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Asis Internet Services v. Member Source Media*, LLC,
    2010 U.S. Dist. LEXIS 47865 (N.D. Cal. Apr. 20, 2010) . . . . . . . . . . . . . . . . . . . . . 6, 7, 8

*ASIS Internet Services v. Optin Global, Inc.*,
    2006 WL 1820902 (N.D. Cal. June 20, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Asis Internet Services v. Subscriberbase, Inc.*,
    2010 U.S. Dist. LEXIS 33645 (N.D. Cal. Apr. 1, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Asis Internet Services v. Subscriberbase, Inc.*,
    2009 U.S. Dist. LEXIS 112852 (N.D. Cal. Dec. 4, 2009) . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Advanstar Communs., Inc. v. Dirt Motosports, Inc.*,
    2006 U.S. Dist. LEXIS 68720 (N.D.N.Y. Sept. 26, 2006) . . . . . . . . . . . . . . . . . . . . . . . . 13

*Baxter v. Palmigiano*,
    425 U.S. 308 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Beauperthuy v. 24 Hour Fitness USA, Inc.*,
    2006 U.S. Dist. LEXIS 88988 (N.D. Cal. Nov. 28, 2006) . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Board of Sch. Comm'rs v. Jacobs*,
    420 U.S. 128 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Day v. Moscow*,
    955 F.2d 807 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*Duplessie v. Zale Corp.*,
    2005 U.S. Dist. LEXIS 9446 (N.D. Tex. May 18, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . 23

**Page**

**CASES (*cont'd*)**

*Ewing v. Coca Cola Bottling Co. of New York, Inc.*,
    2001 WL 767070 (S.D.N.Y. June 25, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Faktor v. Lifestyle Lift*,
    2009 U.S. Dist. LEXIS 47978 (N.D. Ohio June 3, 2009) . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*FTC v. Communidyne, Inc.*,
    1993 W 558754 (N.D. Ill. Dec. 3, 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*FTC v. Freecom Communs., Inc.*,
    401 F.3d 1192 (10th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*FTC v. Medical Billers Network, Inc.*,
    543 F. Supp. 2d 283 (S.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*FTC v. Nat'l Testing Servs., LLC*,
    2005 W 2000634 (M.D. Term. Aug. 18, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*FTC v. Verity Int'l, Ltd.*,
    443 F.3d 48 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-10

*Ferron v. SubscriberBase Holdings, Inc.*,
    2009 U.S. Dist. LEXIS 23583 (S.D. Ohio Mar. 10, 2009) . . . . . . . . . . . . . . . . . . . . . . . . 2-3

*Gionis v. Javitch, Block & Rathbone*,
    405 F. Supp. 2d 856 (S.D. Ohio 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22-23

*Gordon v. Virtumundo, Inc.*,
    575 F.3d 1040 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 7, 8

*Gordon v. Virtumundo, Inc.*,
    2006 U.S. Dist. LEXIS 89494 (W.D. Wash. Dec. 8, 2006),
    *summary judgment granted*, 2007 U.S. Dist. LEXIS 35544
    (W.D. Wash. May 15, 2007), *aff'd*, 575 F.3d 1040 (9th Cir. 2009) . . . . . . . . . . . . . 10, 11, 12

*Hypertouch v. Azoogle*,
    2009 U.S. Dist. LEXIS 25999 (N.D. Cal. Mar. 19, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Painewebber Ltd. P'ships Litig.*,
    147 F.3d 132 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

**Page**

**CASES (*cont'd*)**

*Jaffe v. Capital One Bank,*
    2010 U.S. Dist. LEXIS 18117 (S.D.N.Y. Mar. 10, 2010) . . . . . . . . . . . . . . . . . 17, 18, 19, 21

*Juliano v. Citigroup, N.A.,*
    626 F. Supp. 2d 317 (E.D.N.Y. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16-17

*Korman v. Walking Co.,*
    503 F. Supp. 2d 755 (E.D. Penn. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19-20, 21

*Marisol A. ex rel. Forbes v. Giuliani,*
    126 F.3d 372 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Matassarin v. Lynch,*
    174 F.3d 549 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Morlan v. Universal Guar. Life Ins. Co.,*
    298 F.3d 609 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Murray v. GMAC Mortgage Corp.,*
    434 F.3d 948 (7th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Omega World Travel, Inc. v. Mummagraphics, Inc.,*
    469 F.3d 348 (4th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 5, 7

*Patel v. Contemporary Classics,*
    259 F.3d 123 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Robinson Helicopter Co., Inc. v. Dana Corp.,*
    102 P.3d 268 (Calif. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.,*
    549 F.3d 137 (2d Cir. 2008), *rev'd*, 59 U.S. ___,
    2010 U.S. LEXIS 2929 (U.S. Mar. 31, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Uyeda v. J.A. Cambece Law Office, P.C.,*
    2005 WL 1168421 (N.D. Cal. May 16, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Van Gemert v. Boeing Co.,*
    590 F.2d 433 (2d Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**Page**

**CASES (*cont'd*)**

*Vess v. Ciba-Geigy Corp.,*
    317 F.3d 1097 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Villano Inc. v. CBS, Inc.,*
    176 F.R.D. 130 (S.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Wojchowski v. Daines,*
    498 F.3d 99 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TODD C. BANK, Individually and on Behalf of All Others Similarly Situated,<br><br>*Plaintiff*,<br><br>-against-<br><br>HYDRA GROUP LLC,<br><br>*Defendant*. | 1:10-cv-01770-JG-ALC |

## **INTRODUCTION**

Plaintiff, Todd C. Bank ("Bank"), submits this Memorandum of Law in opposition to the motion by Defendant, Hydra Group LLC ("Hydra"), to dismiss, for a more definite statement, and to strike pursuant to Rules 12(b)(2), 12(b)(6), 12(e), and 12(f) of the Federal Rules of Civil Procedure ("Federal Rules").

This action arises under Section 17529.5(a)(3) of the California Business and Professions Code ("Cal. Bus. & Prof. Code"), which states: "[i]t is unlawful for any person or entity to advertise in a commercial e-mail advertisement . . . [where] [t]he e-mail advertisement has a subject line that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message."

1

**ARGUMENT**

**POINT I**

**THE TYPE OF STATE LAWS THAT MAY REGULATE E-MAIL SPAM
IS NOT LIMITED TO STATE LAWS THAT SOUND IN FRAUD**

**A.      States May Prohibit Falsity or Deception in E-Mail Spam, as Does
Section 17529.5(a)(3) of the California Business and Professions Code**

Hydra, referring to the federal Controlling the Assault of Non-Solicited Pornography and

Marketing Act, 15 U.S.C. § 7701, *et seq.* ("CAN-SPAM"), contends that, "[t]o avoid CAN-SPAM's

preemption clause, a state law must sound in fraud . . . . Accordingly, to the extent Section 17529.5

is not preempted by CAN-SPAM, Bank must allege its claims with particularity, under Federal Rule

of Civil Procedure 9(b)." Def. Mem. at 8-9. Hydra is incorrect.

The CAN-SPAM Act's preemption provision states:

> (1) In general. This Act supersedes any [state] statute . . . that
> *expressly regulates* the use of *electronic mail to send commercial
> messages*, *except* to the extent that any such statute . . . *prohibits
> falsity or deception* in any portion of a commercial electronic mail
> message or information attached thereto.
>
> (2) State law not specific to electronic mail. This Act shall not be
> construed to preempt the applicability of–
>
> (A) State laws that are *not specific to electronic mail*, including State
> trespass, contract, or tort law; or
>
> (B) other State laws to the extent that those laws relate to acts of
> fraud or computer crime.

15 U.S.C. § 7707(b) (emphases added). Thus, "the express language of Section 7707(b) preempts

state regulation of commercial email, but excepts three types of state statutes: (1) those regulating

emails that are false or deceptive, (2) those not specific to email, and (3) those that regulate fraud

or computer crime." *Ferron v. SubscriberBase Holdings, Inc.*, 2009 U.S. Dist. LEXIS 23583 at \*7 (S.D. Ohio Mar. 10, 2009).

With respect to the type of state statute at issue here, *i.e.*, one that "expressly regulates the use of electronic mail to send commercial messages," 15 U.S.C. § 7707(b)(1), the only two federal Circuit Courts to have addressed the scope of CAN-SPAM preemption have found that such statutes may prohibit falsity or deception in e-mail spam provided that the falsity or deception is material.

In *Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348 (4th Cir. 2006), the court held in favor of preemption of a state statute that "'[m]isrepresents any information in identifying the point of origin or the transmission path of the electronic mail message.'" *Id.* at 353 (quoting the state statute). The court explained that the state statute "seems to reach beyond common law fraud or deceit. By its terms, the statute is not limited to inaccuracies in transmission information that were material, led to detrimental reliance by the recipient, and were made by a sender who intended that the misstatements be acted upon and either knew them to be inaccurate or was reckless about their truth," *id.*, adding that "[t]he district court held that the [state] statute[] w[as] preempted insofar as [it] applied to immaterial misrepresentations." *Id.*

The Fourth Circuit's analysis focused on what it deemed to be a requirement that a state statute that prohibits falsity or deception must prohibit only falsity or deception that is *material*. *See id.* at 353-356. Accordingly, the court summarized its analysis by stating that, "we cannot agree that [the plaintiff's] action for *immaterial errors* survives preemption," *id.* at 353 (emphasis added), and also observed that "[t]he exception [to CAN-SPAM's preemption clause] allows states to prohibit 'falsity or deception' in commercial e-mail messages," *id.*, the court explained that "the preemption clause['s] link[age] [of] 'falsity' with 'deception' -- one of the several tort actions based upon

3

misrepresentations," *id.* at 354, "suggests that Congress was operating in the vein of tort when it drafted the preemption clause's exceptions, and intended falsity to refer to other torts involving misrepresentations, rather than to sweep up errors that do not sound in tort." *Id.*

In *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040 (9th Cir. 2009), the court followed the reasoning of *Omega*. The plaintiff in *Gordon* brought, under a state statute that expressly regulates e-mail spam, a "claim relating to allegedly deficient headers." *Id.* at 1058. The claim "specifically [concerned] the 'from lines'" of the e-mails that the defendant had sent to him. *Id.* at 1063. The court held that the claim was preempted because there was "nothing inherently deceptive in [the defendant]'s use of fanciful domain names" in its e-mails' headers. *Id.* On the contrary, the court found that "[the plaintiff]'s alleged header deficiencies relate to, at most, *non-deceptive statements or omissions* and a heightened content or labeling requirement." *Id.* at 1064 (emphasis added) (with respect to the plaintiff's claims concerning the e-mails' subject lines, the court awarded summary judgment to the defendant because the plaintiff had "failed to present a prima facie case in opposition to summary judgment." *Id.* at 1058).

**B.     Section 17529.5(a)(3) of the California Business and Professions Code Does Not Create a Standard That is More Strict Than its Federal Counterpart**

As to the rationale that underlay the *Omega* court's interpretation of the CAN-SPAM Act's preemption provision, the court quoted from the Act as follows:

> "Many States have enacted legislation intended to regulate or reduce unsolicited commercial electronic mail, but these statutes impose different standards and requirements. As a result, they do not appear to have been successful in addressing the problems associated with unsolicited commercial electronic mail, in part because, since an electronic mail address does not specify a geographic location, it can be extremely difficult for law-abiding businesses to know with which of these disparate statutes they are required to comply."

4

*Id.* at 355, quoting 15 U.S.C. § 7701(a)(11). The court then observed:

> Congress implemented these findings by creating a *national standard* that would be undermined to the point of near-irrelevancy by [the plaintiff's] interpretation of the preemption clause. Rather than banning all commercial e-mails or imposing strict liability for insignificant inaccuracies, Congress targeted only e-mails containing something more than an isolated error. . . . The Act created civil causes of action relating to error, but attached requirements beyond simple mistake to each of them. It permitted lawsuits based upon "*materially* false or *materially* misleading" header information. 15 U.S.C. § 7704(a)(1) (emphasis added). The Act made it actionable for a person to "initiate the transmission to a protected computer of a commercial electronic mail message if such person has *actual knowledge, or knowledge fairly implied on the basis of objective circumstances*, that a subject heading of the message would be *likely to mislead a recipient*, acting reasonably under the circumstances, about a *material* fact regarding the contents or subject matter of the message . . . ." *Id.* § 7704(a)(2) (emphasis added). In sum, Congress' enactment governing commercial e-mails reflects a calculus that a *national strict liability standard* for errors would impede "unique opportunities for the development and growth of frictionless commerce," while more narrowly tailored causes of action could effectively respond to the obstacles to "convenience and efficiency" that unsolicited messages present. *Id. § 7701*(a).

*Id.* at 355 (emphasis added). *See also Gordon*, *supra*, 575 F.3d at 1063 ("Congress sought to implement one national standard") (citation and quotation marks omitted).

Cal. Bus. & Prof. Code § 17529.5(a)(3), under which this action arises, not only contains a materiality requirement, but is virtually identical to 15 U.S.C. § 7704(a)(2) of the CAN-SPAM Act, which *Omega* quoted above in explaining that Congress sought to "creat[e] a national standard" governing e-mail spam. *Omega*, 469 F.3d at 355. *Cf.* Cal. Bus. & Prof. Code § 17529.5(a)(3) with 15 U.S.C. § 7704(a)(2). Thus, the California statute does not subject e-mails to stricter standards than that which the CAN-SPAM Act establishes, but differs from the CAN-SPAM Act only with respect to the matter of who may bring a cause of action, which, in the case of violations of Section

5

17529.5(a)(3), may be brought by the state, an internet-service provider, and an e-mail recipient, *see* Cal. Bus. & Prof. Code § 17529.5(b)(1)(A), whereas the CAN-SPAM Act authorizes a cause of action for violations of Section 7704(a)(2) to be brought by a state where "an interest of the residents of that State has been or is threatened or adversely affected by any person who violates [Section 7704(a)(2) ]," 15 U.S.C. § 7704(f)(1), and by an internet-service provider that is "adversely affected by . . . a pattern or practice that violates [Section 7704(a)(2)]." 15 U.S.C. § 7704(g)(1).

That Cal. Bus. & Prof. Code § 17529.5(a)(3) is more generous than the CAN-SPAM Act with respect to the matter of who may bring a cause of action does not bear on the preemption analysis, because the CAN-SPAM Act's preemption provision refers only to the substantive nature of state laws, *see* 15 U.S.C. § 7707(b); and, substantively, Cal. Bus. & Prof. Code § 17529.5(a)(3) tracks Section 7704(a)(2) the CAN-SPAM Act. Congress certainly could have provided that state laws that are not preempted on substantive grounds are nevertheless preempted to the extent that they confer a cause of action on a party that would not have a cause of action under the CAN-SPAM Act; but Congress did not do so.

C.     **A State May Prohibit Materially False or Deceptive E-Mail Spam Without Requiring a Showing of All of the Elements of Common-Law Fraud**

In *Asis Internet Services v. Member Source Media*, LLC, 2010 U.S. Dist. LEXIS 47865 (N.D. Cal. Apr. 20, 2010) ("*Member Source Media*"), the court addressed the precise issue that is before this Court, explaining that issue as follows:

> [w]hether § 17529.5 is excepted from CAN-SPAM preemption hinges on the interpretation of the phrase "falsity or deception" as used in § 7707(b)(1) -- *i.e.*, whether falsity and/or deception requires a showing of all the elements of common law fraud, namely, misrepresentation, knowledge of falsity, intent to defraud, justifiable reliance, and resulting damage. This interpretation is critical because

6

§ 17529.5 does not require the reliance and damages elements.

*Id.* at *4 (citation omitted). *See also id.* at *8 ("*Gordon* did not directly address the precise issue before the Court here -- *i.e.*, whether a plaintiff must plead reliance and damages in order for its state law claim to be saved from preemption.").

The *Member Source Media* court observed that "[t]he Ninth Circuit [in *Gordon*] analyzed the preemption provision and came to the same conclusion as the Fourth Circuit [in *Omega*] -- that 'falsity or deception' refers to 'traditionally tortious conduct,'" *Id.* at *7, quoting *Gordon*, 575 F.3d at 1062, and noting that *Gordon*, in turn, cited *Omega*, 469 F.3d at 354. The *Member Source Media* court proceeded: "[*Gordon*] concluded that [the] state law claim was preempted because it was based on mere technical and immaterial allegations of header deficiencies, and was not based in 'traditional tort theories.' *Gordon*, 575 F.3d at 1064. Traditional tort theories of falsity and deception as contemplated by the savings clause construed in *Gordon* require that the false or deceptive information be material and that the falsity either be intended or tend to mislead." *Id.* at *7-*8, citing *Gordon*, 575 F.3d at 1062. However, the court observed, "*Gordon* did not directly address the precise issue [of] whether a plaintiff must plead reliance and damages in order for its state law claim to be saved from preemption." *Id.* at *8.

The *Member Source Media* court then discussed another recent case that had addressed the issue that *Gordon* "'[ha]d not clearly resolve[d].'" *Id.* at *8, quoting *Asis Internet Services v. Subscriberbase, Inc.*, 2010 U.S. Dist. LEXIS 33645 at *31 (N.D. Cal. Apr. 1, 2010) ("*Subscriberbase*"). As explained by *Member Source Media*, the court in *Subscriberbase*:

> noted that the CAN-SPAM Act and § 17529.5 were only intended to prohibit "attempted or potential deception," those "subject lines that are only 'likely to mislead,' without regard to whether or not they

7

have actually ever misled anyone." *Id.* at \*34. Noting that the preemption provision was created so that "preemption would turn on whether a state targets the behavior of advertisers," [the court] concluded that reliance and damages need not be pleaded because they relate only to the receiver's behavior, rather than that of the advertiser. *Id.* at \*36. Specifically, [the court] stated that "whether the elements of reliance and damages manifest in any instance depends upon the naivete, vulnerability, or circumstance of the recipient." *Id.* [The court] further held that requiring the fraud elements of reliance and damages was not necessary to a uniform regulation system of commercial e-mail, the ultimate purpose of the preemption provision; these elements only serve to limit who could sue under § 17529.5. *See id.* at \*36, 38-39.

*Member Source Media*, 2010 U.S. Dist. LEXIS 47865 at \*8-\*9.

Just as Plaintiff, above, pointed out the substantive nature of CAN-SPAM's preemption provision, the *Member Source Media* court likewise observed:

the substantive behavior saved from preemption and proscribable by the states under *Gordon* is commensurate with the proscriptions under the CAN-SPAM Act. Only those e-mails which have materially deceptive or misleading subject lines or header information are actionable. *See* [*Gordon*, 575 F.3d] at 1063. *Gordon*'s interpretation ensures "'one national standard' applicable across jurisdictions and prevents legitimate businesses from being subjected to "inconsistent and possibly incompatible state regulations." *Id.* This assurance of uniformity of substantive regulation is not upset by allowing variation in laws governing who may bring suit.

*Id.* at \*10.

The *Member Source Media* court answered the question before it as follows: "[b]ecause 'express[-]preemption statutory provisions should be given narrow interpretation,'" *id.* at \*11, quoting *Gordon*, 575 F.3d at 1060, "the Court concludes [that] reliance and damages need not be demonstrated to save a lawsuit from preemption." *Id.*

Additional aspects of the CAN-SPAM Act further make clear that "falsity or deception"

8

means just that: "falsity or deception"; not common-law fraud. The CAN-SPAM Act use the terms "fraud" and "tort law," showing that Congress could easily have used one or both of those terms in Section 7707(b)(1) if that it what it meant. Indeed, the terms "fraud" and "tort law" are used in the *very same subsection* that includes Section 7707(b)(1): Section 7707(b)(2) provides that "[t]his Act shall *not . . . preempt* . . . (A) State laws that are *not specific to electronic mail*, including State trespass, contract, or *tort law*; or (B) other State laws to the extent that those laws relate to acts of *fraud* or computer crime" (emphases added). Thus, Congress was unmistakably aware of the terms "tort law" and "fraud," and thus could easily have used such terms in Section 7707(b)(1).

Section 7704(a)(2) of the Act CAN-SPAM Act further shows that the Act's preemption is not limited to saving e-mail-regulating state statutes that prohibit fraud. Section 7704(a)(2) states:

> It is unlawful for any person to initiate the transmission . . . of a commercial electronic mail message if such person has actual knowledge, or knowledge fairly implied on the basis of objective circumstances, that a subject heading of the message would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message (consistent with the criteria used in enforcement of *section 5 of the Federal Trade Commission Act* (15 U.S.C. 45)).

15 U.S.C. § 7704(a)(2) (emphasis added). Section 5(a)(1) of the FTC Act, which prohibits "unfair or deceptive acts or practices in or affecting commerce," 15 U.S.C. § 45(a)(1), is not limited to fraud, as explained in *FTC v. Verity Int'l, Ltd.*, 443 F.3d 48 (2d Cir. 2006):

> To prove a deceptive act or practice under § 5(a)(1), the FTC must show three elements: [1] a representation, omission, or practice, that [2] is likely to mislead consumers acting reasonably under the circumstances, and [3], the representation, omission, or practice is material. The deception need not be made with intent to deceive; it is enough that the representations or practices were likely to mislead consumers acting reasonably.

9

*Id.* at 63 (citations and quotation marks omitted).

In sum, the CAN-SPAM Act's saving of state laws that "prohibit[] falsity or deception in any portion of a commercial electronic mail message," 15 U.S.C. § 7707(b)(1), is not limited to state laws that prohibit fraud. As a result, Cal. Bus. & Prof. Code § 17529.5(a)(3) is not preempted.

### POINT II

**AN ACTION FOR VIOLATIONS OF SECTION 17529.5(a)(3)
OF THE CALIFORNIA BUSINESS AND PROFESSIONS CODE IS
NOT AN ACTION FOR FRAUD; THEREFORE, THE COMPLAINT IN
THIS ACTION IS SUBJECT TO THE PLEADING STANDARD OF RULE 8(a),
NOT RULE 9(b), OF THE FEDERAL RULES OF CIVIL PROCEDURE**

Section 17529.5(a)(3) of the California Business and Professions Code, under which this action arises, does not equate violations with fraud, as the elements that constitute a violation of Section 17529.5(a)(3) are fewer than "[t]he elements of fraud [under California law, which] are: (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, *i.e.*, to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Robinson Helicopter Co., Inc. v. Dana Corp.*, 102 P.3d 268, 274 (Calif. 2004). Section 17529.5(a)(3) does not require "intent to defraud, *i.e.*, to induce reliance," does not require "justifiable reliance" (or any reliance); and does not require "resulting damage." *See* Cal. Bus. & Prof. Code § 17529.5(b)(1)(B) (awarding statutory damages whether or not there are actual damages).

In *Gordon v. Virtumundo, Inc.*, 2006 U.S. Dist. LEXIS 89494 (W.D. Wash. Dec. 8, 2006), *summary judgment granted*, 2007 U.S. Dist. LEXIS 35544 (W.D. Wash. May 15, 2007), *aff'd*, 575 F.3d 1040 (9th Cir. 2009), the court addressed the issue of the applicable pleading standard for claims under Cal. Bus. & Prof. Code § 17529.5(a)(3). In *Gordon*, the plaintiffs brought claims under

10

several provisions of the CAN-SPAM Act, including claims for "materially misleading subject lines" under Section 7704(a)(2), *see id.* at *7, which, as discussed in Point I.B, *supra*, is the federal counterpart to Cal. Bus. & Prof. Code § 17529.5(a)(3). In addition, the plaintiffs in *Gordon* brought claims under Washington State's e-mail statute, among which were claims for "e-mails [that] contained false or misleading subject lines." *Gordon*, 2006 U.S. Dist. LEXIS 89494 at *8. The court held that heightened pleading under Federal Rule 9(b) does not apply to claims for misleading subject lines under both the CAN-SPAM Act and under the Washington State statute. Regarding the CAN-SPAM Act, the court explained:

> In their claims under the CAN-SPAM Act, Plaintiffs allege that Defendants initiated the transmission of commercial e-mail messages to e-mail addresses served by Plaintiffs' domain name and servers which (1) *contained materially misleading subject lines*, (2) did not include an unsubscribe option, (3) did not disclose that they were advertisements, and (4) did not provide a postal address. Plaintiffs also contend that Defendants illegally "harvested" their e-mail addresses. Finally, Plaintiffs contend that Defendants continued to send them e-mails after Plaintiffs had asked not to receive further messages. Each of these claims identifies an act prohibited by CAN-SPAM. *See* 15 U.S.C. § 7704. Only one of these claims incorporates any of the elements of fraud. A "materially misleading" e-mail subject line could be considered a false representation of a material fact. *Plaintiffs, however, do not allege that Defendants knew the subject lines were misleading, that they intended the e-mails to be deceptive, or that Plaintiffs took any action in reliance on Defendants' alleged misrepresentations.* Therefore, under *Vess* [*v. Ciba-Geigy Corp.*, 317 F.3d 1097 (9th Cir. 2003)], *none of Plaintiffs' CAN-SPAM claims constitute averments of fraud and Plaintiffs are not required to plead them with particularity.*

*Id.* at *7-*8 (emphases added) (citations to complaint omitted).

Regarding the Washington State statute (Washington Commercial Electronic Mail Act ("CEMA")), the court explained:

11

The result is slightly different under CEMA, however. Plaintiffs claim that e-mails sent by Defendants violated CEMA because the e-mails misrepresented or obscured their point of origin and/or the e-mails contained *false or misleading subject lines. Like Plaintiffs' CAN-SPAM claims, these allegations do not necessarily allege an intent to defraud, and therefore they are not subject to the requirements of Rule 9(b).* Plaintiffs, however, also charge that Defendants' e-mails violated a provision of CEMA, that prohibits "any action to induce a person to provide personally identifying information . . . by representing oneself . . . to be another person." This claim does include an element of intent, as well as knowledge, and a material misrepresentation. This claim thus potentially avers fraud within the meaning of *Vess*, alleging all of the requirements of common law fraud except detrimental reliance.

*Id.* at *8-*9 (emphases added) (ellipses in original) (citations omitted).

Like Section 7704(a)(2) of the CAN-SPAM Act, and like the provision of Washington State's e-mail statute that prohibits false or misleading subject lines, a violation of Cal. Bus. & Prof. Code § 17529.5(a)(3) does not require that an e-mail sender have an intent to mislead the recipient; does not require reliance by the recipient; and does not require damages.

Claims under Cal. Bus. & Prof. Code § 17529.5(a)(3) are based on the same criteria as claims under Section 5 of the Federal Trade Commission Act. *Cf.* Section 17529.5(a)(3) with the virtually identical 15 U.S.C. § 7704(a)(2), which is to be interpreted in accordance with Section 5, as noted in Point I.C, *supra*. Claims under Section 5 are not subject to Rule 9(b) pleading, for reasons that are equally applicable to claims under Section 17529.5(a)(3). *See FTC v. Freecom Communs., Inc.*, 401 F.3d 1192, 1204, n.7 (10th Cir. 2005) ("[a] § 5 claim simply is not a claim of fraud as that term is commonly understood or as contemplated by Rule 9(b) . . . . Unlike the elements of common law fraud, the FTC *need not prove scienter, reliance, or injury* to establish a § 5 violation" (emphasis added)); *FTC v. Medical Billers Network, Inc.*, 543 F. Supp. 2d 283, 314 (S.D.N.Y. 2008) (citing

12

*FTC v. Communidyne, Inc.*, 1993 W 558754 at *2 (N.D. Ill. Dec. 3, 1993), for "holding that a claim under Section 5(a) is not a claim of fraud or mistake subject to Rule 9(b) because has *no scienter or reliance requirement*" (emphasis added), and citing *FTC v. Nat'l Testing Servs., LLC*, 2005 W 2000634 at *2 (M.D. Term. Aug. 18, 2005), for "holding that Rule 9(b) does not apply to Section 5(a) claims because *neither intent to deceive, proof of consumer reliance, nor proof of consumer injury are necessary elements*" (emphasis added)). *See also Villano Inc. v. CBS, Inc.*, 176 F.R.D. 130 (S.D.N.Y. 1997), a case that concerned false-advertising claims under the Lanham Act,15 U.S.C. § 1051, *et seq.*:

> The making of a false statement is not *per se* one of those "Special Matters" that Rule 9 requires be specially pleaded. Rather, the particularity requirement of Rule 9(b) is limited to averments of "fraud or mistake." . . . [N]othing in the language or history of Rule 9(b) suggests that it is intended to apply, willy-nilly, to every statutory tort that includes an element of false statement. . . .
>
> No matter how parsed, a claim of false advertising under the Lanham Act--one of a panoply of trademark torts created by the [Lanham] Act--is *not identical to a claim of fraud*. Fraud requires, not just the making of a statement known to be false, but also, *inter alia*, a *specific intent to harm* the victim and defraud him of his money or property.

*Id.* at 131 (emphases added); *see also Advanstar Communs., Inc. v. Dirt Motosports, Inc.*, 2006 U.S. Dist. LEXIS 68720 at *13 (N.D.N.Y. Sept. 26, 2006) ("while it is arguable that a specific false[-] advertising claim which includes all elements of a fraud claim would be subject to Rule 9(b)'s particularity requirement, there is no basis to require particularity of pleading in every claim of false advertising," citing *Villano*, 176 F.R.D. at 131 (additional internal citation omitted)).

In *Asis Internet Services v. Subscriberbase, Inc.*, 2009 U.S. Dist. LEXIS 112852 (N.D. Cal. Dec. 4, 2009) ("*Subscriberbase*"), the court reached a different conclusion: "[a]lthough section

13

17529.5[(a)(3)] only requires [p]laintiffs to plead knowledge of a likelihood of misleading a reasonable person, thereby eliminating the elements of reliance and damages that would be present in a common law fraud claim, the Court finds that the absence of these elements is not enough to eliminate the need for [pleading with] specificity [under Rule 9(b)]." *Id.* at *10. However, the court's reasoning cannot be reconciled with the above-cited cases.

In *ASIS Internet Services v. Imarketing Consultants, Inc.*, 2008 WL 2095498 (N.D. Cal. May 16, 2008), which Defendant cites, *see* Def. Mem. at 9, the court stated that "[w]here there are allegations that the contents of the emails, including the header information, are fraudulent, Federal Rule [] 9(b) applies to those particular averments of fraud." *Imarketing Consultants*, 2008 WL 2095498 at *8 (although the court added that, "Rule 9(b)'s specificity requirement does not apply to allegations regarding the origination of the addresses to which the emails were sent, only to the emails' content." *Id.*). However, as with regard to *Subscriberbase*, *supra*, the reasoning of *Imarketing Consultants* cannot be reconciled either with the numerous cases upon which Plaintiff relies. Likewise, insofar as *ASIS Internet Services v. Optin Global, Inc.*, 2006 WL 1820902 (N.D. Cal. June 20, 2006), which Defendant also cites, *see* Def. Mem. at 9, held that Rule 9(b) applies to the content of the e-mails, it, too, should not be followed.

In *Hypertouch v. Azoogle*, 2009 U.S. Dist. LEXIS 25999 (N.D. Cal. Mar. 19, 2009), which Defendants also cite, *see* Def. Mem. at 9, the court held that Rule 9(a) applied to the complaint's allegations of violations of Cal. Bus. & Prof. Code § 17529.5(a)(3). However, in *Hypertouch*, the plaintiff had pleaded all of the elements of fraud, *see Hypertouch*, 2009 U.S. Dist. LEXIS 25999 at *2-*3, n.1, unlike in the present case.

Finally, with respect to the manner in which Hydra's e-mails "would likely be misleading to

Plaintiff and the other recipients of the same [e-mails]," Compl., ¶ 12, Plaintiff alleges that the

"material[ly] [misleading] fact [is] that the [e-mails purported to] concern[] a specific insurance

policy that the recipient already possessed, when, on the contrary, the UCEAs did not pertain to any

recipient's specific policy." *Id.* Thus, even if Rule 9(b) had been applicable with respect to this

allegation, that Rule would have been satisfied.

## POINT III

### THE COMPLAINT IS SUFFICIENTLY PLEADED UNDER
### RULE 8(a) OF THE FEDERAL RULES OF CIVIL PROCEDURE

The Complaint describes, consistent with the criteria of Cal. Bus. & Prof. Code §

17529.5(a)(3), the conduct in which, Plaintiff alleges, Hydra engaged. *See* Compl. (Doc. 1), ¶¶ 8-13.

Thus, the Complaint clearly satisfies the notice-pleading standard of Federal Rule 8(a).

Although Hydra attacks the sufficiency of the Complaint based on Rule 9(a) standards,

Plaintiff addresses Hydra's attacks even though Rule 9(a) does not apply to the Complaint, as set

forth in Point II, *supra*. First, Hydra, referring to the three e-mails whose receipt Plaintiff alleges,

complains that Plaintiff "makes no attempt to explain [] how this sample was selected." Def. Mem.

at 6. However, nowhere in the Complaint is it even suggested that these e-mails were merely a

"sample" of some larger number of e-mails that Plaintiff had received.

Second, Hydra's contention that "[e]ventually, Bank will have to produce each of the 'at

least' 1,000,000 Emails and prove why each one violates Section 17529.5," Def. Mem. at 6, is, as

a class-certification issue, premature. *See* Point IV.B, *infra*; moreover, for example: just like in cases

under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"), which regulates

communications by debt collectors, issues of proof would be addressed during the certification

15

process and, if the class is certified, before and during the trial of this action.

Third, Hydra, apparently not satisfied with the merits of its motion, calls Plaintiff "an industry-recognized professional spam plaintiff." Def. Mem. at 6. Because Defendant did not explain this charge (even though being a so-called "professional plaintiff" could, in fact, be desirable, *see Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 954 (7th Cir. 2006)), Hydra should explain the basis of this accusation, which is clearly meant to bias this Court against Plaintiff.

Fourth, Hydra states that "Hydra is not an insurance company. How does Bank claim that Hydra advertised in this email?" Def. Mem. at 6. *See also* Def. Mem. at 11, in which Hydra contends that Cal. Bus. & Prof. Code § 17529.5(a)(3) regulates only e-mails of parties that advertise on their own behalf. However, Cal. Bus. & Prof. Code § 17529.5(a)(3), as seen by its plain language, is not limited to e-mails that are sent by parties advertising on their own behalf.

Finally, Hydra's contention that Plaintiff was obligated to include, in the Complaint, copies of the e-mails that he alleges to have received from Hydra, *see* Def. Mem. at 4, 7, 11, is incorrect. *See Arend v. Total Recovery Servs.*, 2006 U.S. Dist. LEXIS 50479 at *4 (E.D.N.Y. July 24, 2006) (documents referred to in pleadings are incorporated by reference).

## POINT IV

### PRIOR TO MOVING FOR CLASS CERTIFICATION, PLAINTIFF MAY PROCEED *PRO SE*

Although Hydra did not directly raise the issue of Plaintiff's *pro se* status, this Court would be obligated to do so *sua sponte* if, in the Court's view, its resolution might result in the dismissal of the class claims, as such dismissal would render this Court without subject-matter jurisdiction (in the form of traditional diversity) over Plaintiff's individual claims. *See Juliano v. Citigroup, N.A.*,

626 F. Supp. 2d 317, 318 (E.D.N.Y. 2009) ("a district court has an unflagging duty to raise the issue *sua sponte* whenever jurisdiction appears to be lacking."). Thus, it is appropriate for Plaintiff to address his *pro se* status here.

**A.      During the Current Stage of this Action, Plaintiff is Representing Only Himself**

The fact that Plaintiff, acting *pro se*, has brought this action as a putative class action does not, during the current, pre-certification stage of this action, have any bearing on his right to litigate on his own behalf. Federal Rule 23(g)(1) requires that "a court *that certifies a class* must appoint class counsel" (emphasis added), the timing of such requirement being a reflection of the fact that, "until certification there is *no class action* but merely the *prospect* of one; the *only* action is the suit by the *named plaintiffs*." *Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 616 (7th Cir. 2002) (emphases added). Thus, Plaintiff might be required to have separate counsel only if and when this action were certified.

**B.      The Issue of Whether Plaintiff Would Be Able to Act as
           Counsel on Behalf of the Putative Class is Premature**

Insofar as counsel for a certified class is deemed to have an attorney-client relationship with the unnamed class members, *see Van Gemert v. Boeing Co.*, 590 F.2d 433, 440 n.15 (2d Cir. 1978), the rationale for the general rule that a *non*-attorney plaintiff may not represent a certified class, *see Jaffe v. Capital One Bank*, 2010 U.S. Dist. LEXIS 18117 at *29-*30 (S.D.N.Y. Mar. 10, 2010), is obvious. Because Plaintiff, however, is an attorney who is admitted to this Court, the rule against a *pro se* class representative acting as class counsel, insofar as that prohibition stems from the fact that a non-attorney may not represent third parties, does not apply here. Nevertheless, despite the absence of such a concrete rationale, courts have generally found that a *pro se* attorney is not

adequate to represent a class, largely because his interest in class-counsel fees is viewed as rendering him unqualified to fulfill the role of a class representative insofar as that role includes a duty to place the interests of his fellow class members above the interest that his attorney has in obtaining legal fees. *See*, *e.g.*, *Jaffe*, *supra*, 2010 U.S. Dist. LEXIS 18117 at *29-*30 ("'an attorney may not bring a class action *pro se* because too close a relationship between the class representative and class counsel is a disqualifying conflict of interest,'" quoting 5 James Wm. Moore *et al.*, *Moore's Federal Practice* § 23.25 (3d ed. 2010), and citing *Matassarin v. Lynch*, 174 F.3d 549, 559 (5th Cir. 1999), which involved a *pro se* attorney, for "holding that a *pro se* plaintiff's 'duty to represent class interests would impermissibly conflict with her chance to gain financially from an award of attorneys' fees.'" *Jaffe*, 2010 U.S. Dist. LEXIS 18117 at *30, quoting *Matassarin*, 174 F.3d at 559).

Whether or not this Court would find that Plaintiff may act as both class representative and class counsel, this issue is, for two reasons, not yet ripe to be addressed on its merits. First, a putative class representative, whether an attorney or non-attorney, may represent himself at least until the class is certified, *see* Point III.A, *supra*; second, Plaintiff has not stated that he intends to seek to have himself appointed as class counsel, and, of course, has not waived his right, pursuant to Federal Rule 23(g)(1), to seek the appointment of separate counsel in the event of the class being certified; nor, of course, has Plaintiff waived his right to obtain counsel prior to the class-certification stage of this action. In addition, the dual-role issue is not procedurally ripe, as set forth in Point IV.B, *infra*.

18

(i)      **Federal Rule 23(d)(1)(D) Does Not Authorize the Dismissal**
**of Class Claims Before the Class-Certification Stage**

In *Jaffe*, *supra*, the court, having taken the view that a *pro se* attorney could not adequately

serve as the class representative (and thus presumably could not satisfy Federal Rule 23(a)(4)),

"[struck] the Complaint's class allegations . . . pursuant to Federal Rule [] 23(d)(1)(D)," *Jaffe*, 2010

U.S. Dist. LEXIS 18117 at *31, explaining as follows:

> [] Rule [] 23(d)(1)(D) provides that the court may "require that the
> pleadings be amended to eliminate allegations about representation
> of absent persons. . . ." Fed. R. Civ. P. 23(d)(1)(D). Courts in this
> district have held that a motion to strike class allegations. . . may be
> addressed "prior to the certification of the class if the inquiry would
> not mirror the class certification inquiry and if resolution of the
> motion is clear."

*Id.* at *28 (first ellipsis in original; second ellipsis added) (citations and quotation marks omitted).

*Jaffe* should not have struck the class allegations. First, the court omitted a key clause of Rule

23(d)(1). That clause states: "[i]n conducting an *action under this rule*, the court may issue orders

that: . . . ." (emphasis added). "This rule," of course, is Rule 23; and an action "under" Rule 23 is,

by definition, an action that has been certified. *See* Fed. R. Civ. 23(a), (b), and (c).

That the application of Rule 23(d)(1)(D) is limited to the post-certification stage of a class

action was recognized in *Faktor v. Lifestyle Lift*, 2009 U.S. Dist. LEXIS 47978 (N.D. Ohio June 3,

2009), which explained:

> Rule 23(d)(1)(D) is "procedurally inseparable from subdivision
> (c)(1)(A), which provides that 'when a person sues or is sued as a
> representative of a class, the court must-at an early practicable time-
> determine by order whether to certify the action as a class.'" 7B
> CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL
> PRACTICE AND PROCEDURE § 1795. An order under Rule
> 23(d)(1)(D) is used after the class determination under Rule (c)(1)(A).
> *See Id.*; *see*, *e.g.*, *Korman v. Walking Co.*, 503 F. Supp. 2d 755, 762-

19

> 63 (E.D. Penn. 2007); *Beauperthuy v. 24 Hour Fitness USA, Inc.*, No. 06-0715, 2006 U.S. Dist. LEXIS 88988, 2006 WL 3422198, at *3 (N.D. Cal. Nov. 28, 2006).

*Id.* at *4.

In *Beauperthuy v. 24 Hour Fitness USA, Inc.*, 2006 U.S. Dist. LEXIS 88988 (N.D. Cal. Nov. 28, 2006), the court addressed the predecessor to Rule 23(d)(1)(D) and reached the same conclusion as did the *Faktor* court. The predecessor, which was Rule 23(d)(4), is materially identical to the current rule; the former rule states: "[i]n the conduct of actions to which *this rule* applies, the court may make appropriate orders: . . . requiring that the pleadings be amended to eliminate therefrom allegations as to representation of absent persons, and that the action proceed accordingly." The *Beauperthuy* court explained:

> Defendants' Rule 23(d)(4) motion is an improper attempt to argue against class certification before the motion for class certification has been made and while discovery regarding class certification is not yet complete. Rule 23(d)(4) reads:
>
> > Orders in the Conduct of Actions. In the Conduct of actions to which this rule applies, the court may make appropriate orders: … (4) requiring that the pleadings be amended to eliminate therefrom allegations as to representation of absent persons, and that the action proceed accordingly.
>
> Fed. R. Civ. P. 23(d)(4). Rule 23 applies *to class actions*. *See* Fed. R. Civ. P. 23. *As the Court has yet to address whether the part of Plaintiffs' action brought under Rule 23 may proceed as a class action, Rule 23(d)(4) has no application to the present situation before it. See* Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 1795.
>
> An examination under Rule 23(c) whether to certify a class is "procedurally inseparable" from a determination under Rule 23(d)(4) whether the Court, on the basis of that examination, should require an amendment of the pleadings. *Id.* Indeed, the bulk of Defendants' arguments in favor of its Motion are actually arguments against class

> certification. It would be improper to allow Defendants to slip
> through the backdoor what is essentially an opposition to a motion for
> class certification before Plaintiffs have made such a motion and
> when discovery on the issue is still on-going.

*Id.* at \*9-\*11 (emphases added) (internal citation omitted). *Accord*, *Korman v. Walking Co.*, 503 F.

Supp. 2d 755, 762-763 (E.D. Pa. 2007). *See also In re Painewebber Ltd. P'ships Litig.*, 147 F.3d

132, 135 (2d Cir. 1998):

> Absent certification by a court and identification of the class,
> the action is not properly a class action within the meaning of Rule
> 23(c)(1) and (c)(3). *See Baxter v. Palmigiano*, 425 U.S. 308, 310-11
> n. 1 (1976) (district court improperly treated suit as a class action
> because it failed to certify the suit as a class action); *cf. Board of Sch.
> Comm'rs v. Jacobs*, 420 U.S. 128, 129 (1975) (per curiam) (refusing
> to treat an action as a class action because the putative class had not
> been certified). Without a proper Rule 23 class action before it, a
> district court lacks authority to enter orders establishing opt-out
> procedures and deadlines for prospective class members.

*Id.* at 138. In sum, Rule 23(d)(4) applies to *actual* class actions, not putative ones.

Even if the interpretation by *Jaffe*, *supra*, of Rule 23(d)(1)(D) were correct, the court's

striking of the class claims would still have been incorrect for the reasons set forth above; *i.e.*, that

Plaintiff would be required to have separate counsel only if and when this action were certified, and

that, until then, Plaintiff would be representing only himself, and would be doing so as a matter of

right.

### (ii) Federal Rule 12(f) Does Not Authorize the Dismissal of Class Claims Before the Class-Certification Stage

To the extent that Hydra has sought dismissal pursuant to Federal Rule 12(f), that Rule is not

a proper basis for seeking such relief. *See Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992) (holding

that Rule 12(f) is "not the appropriate procedural vehicle for [a] motion" to dismiss a complaint, and

noting that "Rule 12(f) [is] designed for excision of material from a pleading, not for dismissal of claims in their entirety." *Id.*, citing 5A C. Wright & A. Miller, Federal Practice and Procedure § 1380, at 644 (1990)). For the same reason, dismissal of class claims would be inappropriate under Rule 12(f).

### (iii) Because the Issue of Adequate Representation Is a Class-Certification Issue, It must Be Addressed at the Class-Certification Stage

It is generally premature to rule on the issue of whether a putative class representative is able to satisfy the Rule 23 class-certification prerequisites. *See Uyeda v. J.A. Cambece Law Office, P.C.*, 2005 WL 1168421 (N.D. Cal. May 16, 2005); *Ewing v. Coca Cola Bottling Co. of New York, Inc.*, 2001 WL 767070 at *8-*9 (S.D.N.Y. June 25, 2001). One of the prerequisites to class certification is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This adequacy-of-representation prerequisite includes the "require[ment] that plaintiffs demonstrate that class counsel is qualified, experienced, and generally able to conduct the litigation." *Marisol A. ex rel. Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (citation and quotation marks omitted). As in the case of the prerequisites of numerosity, commonality, and typicality, *see* Rule 23(a)(1), (2), and (3), respectively, the issue of whether the adequacy-of-representation prerequisite can be satisfied should be addressed as part of the class-certification motion. *See Alejandros Bados Madrid v. Peak Constr., Inc.*, 2009 U.S. Dist. LEXIS 107370 at *6 (D. Ariz. Nov. 2, 2009) ("[p]laintiffs have yet to move for certification under Rule 23, so a ruling on the adequacy of counsel for purposes of Rule 23(g) would be premature); *see also Gionis v. Javitch, Block & Rathbone*, 405 F. Supp. 2d 856, 872 (S.D. Ohio 2005) ("[p]laintiff's potential inability to act as lead plaintiff for the putative class is not, at this stage of the litigation, grounds for

22

reconsidering the Court's previous Order, or for striking the class allegations from the complaint");

*Duplessie v. Zale Corp.*, 2005 U.S. Dist. LEXIS 9446 at \*2 (N.D. Tex. May 18, 2005) ("[the

defendant]'s arguments concerning [the plaintiff]'s adequacy as a class representative [is] premature"

during the pre-certification stage).

> **(iv)    Only Class Claims That, as a Matter of Law, are Precluded
> for Reasons Other Than Their Inability to Satisfy the Prerequisites
> of Rule 23 of the Federal Rules of Civil Procedure May
> Be Dismissed Before the Class-Certification Stage**

Whereas Rule 23(d)(4) applies only to actions that are in the post-class-certification stage,

and whereas issues that concern Rule 23 class-certification prerequisites are to be dealt with in the

course of the plaintiff's motion for class certification, the dismissal of class claims before the

certification stage could be made under Rule 12(b)(6), "under [which dismissal] is appropriate

where, even if all of the allegations contained in a complaint are true, a claim fails as a matter of

law." *Wojchowski v. Daines*, 498 F.3d 99, 106 (2d Cir. 2007). Thus, if class claims could not be

maintained as a matter of law such that the plaintiff would not even have the right to *seek* class

certification under Rule 23, a motion to dismiss the class claims would be appropriate under Rule

12(b)(6). As an example, *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 549 F.3d 137

(2d Cir. 2008), *rev'd*, 59 U.S. ___, 2010 U.S. LEXIS 2929 (U.S. Mar. 31, 2010), held that N.Y.

CPLR § 901(b) prohibits class actions that seek statutory damages under New York state-law claims

that are brought in federal court. A plaintiff who brought such a putative class action would, based

on that ruling, not have had the opportunity to even address the Rule 23 prerequisites, because such

a plaintiff would have been precluded from doing so by CPLR § 901(b).

Whereas Rule 12(b)(6) applies to pre-answer motions, a defendant that has answered a class

23

complaint could move, with respect to class claims, for judgment on the pleadings under Rule 12(c), as "[t]he standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemporary Classics*, 259 F.3d 123, 126 (2d Cir. 2001).

## <u>CONCLUSION</u>

Based upon the foregoing, Plaintiff respectfully requests that this Court deny Defendant's motion in its entirety.

Dated: July 15, 2010

s/ *Todd C. Bank*

TODD C. BANK
119-40 Union Turnpike
Fourth Floor
Kew Gardens, New York 11415
(718) 520-7125

Attorney for Plaintiff

24